## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC D. TEREO,** | : | **CIVIL ACTION NO. 1:16-CV-1436** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DARRYL L. SMUCK, II and** | : | |
| **SOUTHERN REGIONAL POLICE** | : | |
| **DEPARTMENT,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Eric D. Tereo ("Tereo") filed the above-captioned action asserting malicious prosecution claims pursuant to 42 U.S.C. § 1983 and state law. Before the court is a motion (Doc. 11) to dismiss filed by defendants Officer Darryl L. Smuck, II ("Officer Smuck") and the Southern Regional Police Department. The court will grant in part and deny in part the pending motion.

## I.    Factual Background & Procedural History

On November 19, 2013, Tereo visited a Sunoco gas station and convenience store located at 62 North Main Street in Stewartstown, York County, Pennsylvania. (Doc. 1 ¶ 7). Upon exiting the store and returning to his vehicle, Tereo witnessed a dispute between a man and woman. (Id. ¶¶ 10-12). Tereo observed the man, later identified as seventy-six year old Carl E. Johnson, Jr. ("Johnson"), reaching into the woman's vehicle. (Id. ¶¶ 8, 12). The woman drove away from Johnson as a Sunoco employee, Tammy Reynolds ("Reynolds"), exited the store. (Id. ¶¶ 14-15). According to the complaint, Johnson then advanced toward Reynolds, causing Tereo to fear for

Reynolds' safety. (<u>Id.</u> ¶¶ 16-17). In response, Tereo ran to Reynolds and allegedly placed himself in a protective position between Reynolds and Johnson. (<u>Id.</u> ¶¶ 18-19). Tereo purportedly put his hands in the air and instructed Johnson to leave. (<u>Id.</u> ¶ 20). Johnson ignored Tereo's request, attempted to step around Tereo, and extended his arms towards Reynolds. (<u>Id.</u> ¶¶ 21-23). Tereo reacted to this threat by pushing Johnson away. (<u>Id.</u> ¶ 24). The push caused Johnson to fall backwards off of a curb. (<u>Id.</u>)

After his fall, Johnson allegedly yelled that he was going to summon his son to fight Tereo. (<u>Id.</u> ¶ 25). Johnson then unsuccessfully sought to have an employee of a neighboring business, Leffler Fuel, call the police. (<u>Id.</u> ¶¶ 26-27). According to the *allegata*, immediately prior to the subject altercation, Reynolds told Johnson to leave the store and never return. (<u>Id.</u> ¶ 28). Moreover, Johnson allegedly had a history of harassing female employees and customers of Sunoco and was previously told not to return there. (<u>Id.</u> ¶¶ 29-30). Johnson claimed that his fall resulted in physical injuries. (<u>Id.</u> ¶ 31).

Johnson reported the confrontation to Officer James Bowser ("Officer Bowser") of the Stewartstown Police Department, who conducted an initial investigation. (<u>Id.</u> ¶ 32). Officer Bowser reviewed surveillance footage of the incident and interviewed several witnesses. (<u>See id.</u> ¶ 78). The surveillance footage depicted Johnson as the aggressor. (<u>See id.</u>) Two eyewitnesses also described Johnson as the aggressor and told Officer Bowser that Tereo acted in self-defense and in defense of Reynolds. (<u>See id.</u>) A third witness informed Officer Bowser of Johnson's past transgressions at Sunoco. (<u>See id.</u>)

2

The Stewartstown Police Department closed at the end of 2013, at which time the borough of Stewartstown contracted with Southern Regional Police Department for law enforcement services. (Id. ¶¶ 33-34). On January 18, 2014, Johnson's wife reported the incident to Officer Smuck of the Southern Regional Police Department. (Id. ¶ 35). Officer Smuck reviewed Officer Bowser's notes, an officer's log, surveillance photos, Johnson's written statement, and Johnson's medical records, but was unable to locate or obtain the surveillance footage examined by Officer Bowser. (Id. ¶¶ 36, 38-39). Officer Smuck also interviewed Johnson and his wife. (Id. ¶ 37).

Officer Smuck and Southern Regional Police Department released a surveillance photo of Tereo and identified him as a person of interest. (Id. ¶¶ 41-42). Tereo was in Delaware at the time and his friends in Pennsylvania informed him that local television news outlets were reporting on the incident. (Id. ¶ 43). Media releases stated that Tereo had struck and spit on an elderly man. (Id. ¶ 44). Officer Smuck received information indicating that Tereo was the man in the photo. (Id. ¶ 45). Johnson identified Tereo in a photo lineup. (Id. ¶ 46).

Thereafter, Officer Smuck filed a criminal complaint charging Tereo with state law crimes of simple assault, disorderly conduct, and physical harassment. (Id. ¶ 47). The affidavit of probable cause attached to the criminal complaint described Officer Smuck's findings as follows:

> On 11/19/2013 at 1505 hours Officer James Bowser of the Stewartstown Police Department was dispatched to the Sunoco Gas Station located at 62 N. Main St. in Stewartstown Borough for an assault.

On 01/18/2014 I met with the victim Carl Johnson and his wife at their residence. Carl Johnson advised the following: He stated that he was at the Sunoco filling his vehicle with gasoline when a female in her 20's pulled in next to Johnson and had a "lit cigarette in her mouth." Johnson asked her to extinguish the cigarette because he was pumping gasoline and advised of the no smoking signs. Johnson felt that she did not hear him or ignored him. He said that she then placed the cigarette in the ash stand and entered the store. About 2-3 minutes later the same female exited the store and Johnson was still pumping gasoline. Johnson walked over to the female and told her she should have put the cigarette out and "reminded her that she was in a no smoking zone." Johnson reported that the store clerk then exited the store and asked him not to be harassing the customers and requested that he leave. At the same time Johnson reported that a "young man" came from behind him and started to threaten him, stating that he would smash Johnson's face in for harassing a woman in his presence. Johnson[ ]reported that the male subject started "sticking his finger in Johnson's face" and stated "old man I'll push your [f******] face in" and then pushed Johnson hard enough to "slam him extremely into the ground" which is concrete pavement. Johnson stated that he was stunned and unable to get up immediately. After Johnson was able to get back up he stated that the man charged him again, "got right in my face saying he had something else for me", and he "blew spit in my face." Johnson stated that the man continued to threaten him so Johnson went to the Leffler Fuel Co. 911 was called by his wife after Leffler Oil refused to help him. Johnson stated that he attempted to get the license plate off the car but the male blocked his view and threatened him again. Johnson stated that the male subject got into a small gray or green car and left while the store clerk told him to "get out and stay away."

Johnson was transported by ambulance to Memorial Hospital ED for evaluation and treatment. Medical records from Memorial Hospital showed the following diagnosis for Johnson: Assault, rib fracture - 1 rib closed, cervical strain, head injury - superficial, chest wall contusion, and hip strain.

On 01/27/2014 a photo of the suspect and vehicle were released to the media and placed on the department Facebook page for identification.

I received an anonymous call on 01/28/2014 from an anonymous caller stating she believed the person in the surveillance photo was Eric TEREO and that he also has a similar vehicle. Another person also gave the same information via tip line.

York Area Regional Police were sent to TEREO's last known address (Crestview Dr.) and TEREO never contacted me. I was also given several cell phone numbers for TEREO but he never returned my phone call. TEREO also deactivated or blocked his Facebook account the same day I sent York Area Regional PD to the address listed on his driver's license.

On 02/11/2014 victim Carl Johnson and his wife appeared at the police station for follow up. A photo lineup was displayed to Johnson and he identified Eric TEREO as the one who assaulted him at the gas station.

Johnson reported that he is having ongoing medical issues as a result of the assault which include chronic left shoulder pain/problems and chronic protruding left rib and pain (rib that was fractured as a result of this incident).

TEREO currently has a warrant issued for disorderly conduct and has not returned any of my phone calls. Based on this information I am requesting a warrant of arrest be issued for Eric Dennis TEREO.

(Id. ¶ 48).

A warrant for Tereo's arrest issued based on Officer Smuck's affidavit.

(See id. ¶ 49). Tereo surrendered himself to law enforcement upon learning of the warrant. (Id.) Officers then placed Tereo under arrest and transported him to York County Prison. (Id. ¶ 50). The criminal charges were bound over for court and the prosecutor filed an information for the crimes charged in the criminal complaint.

(Id. ¶ 51).  According to the complaint, Tereo spent roughly $10,000 on his bail and defense, suffered alienation from family and friends, was expelled from the Pennsylvania State University, and could not find employment.  (Id. ¶¶ 53-56).  On March 12, 2015, Tereo was acquitted of all charges following a jury trial.  (Id. ¶ 57). Nonetheless, the charges remain on Tereo's record and media stories remain on the internet.  (Id. ¶¶ 59-60).

Tereo filed this civil rights action on July 11, 2016.  (Doc. 1).  In his three-count complaint, Tereo asserts claims for malicious prosecution under federal (Count I) and state law (Count III), as well as a municipal liability claim under Monell v. Department of Social Services, 436 U.S. 658, 690-94 (1978) (Count II).  On October 25, 2016, Officer Smuck and Southern Regional Police Department filed the instant motion (Doc. 11) to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion is fully briefed and ripe for disposition.

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

**III.** **Discussion**

Defendants contend that Officer Smuck possessed probable cause to arrest Tereo, defeating his Section 1983 and state law claims for malicious prosecution. Defendants also maintain that Tereo's factual averments are insufficient to establish a cognizable <u>Monell</u> claim against the Southern Regional Police Department. The court will address these issues *seriatim*.

**A.** **Section 1983 Claims**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. <u>See</u> 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." <u>Kneipp</u>, 95 F.3d at 1204 (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)). There is no dispute that defendants are state actors for purposes of Section 1983. We thus consider only whether defendants deprived Tereo of his constitutional rights.

**1.** ***Malicious Prosecution Claim Against Officer Smuck***

**a.** **Probable Cause**

The gravamen of defendants' challenge to the Section 1983 claims is their asseveration that Officer Smuck had probable cause to arrest Tereo. (Doc. 11 ¶ 5; Doc. 13 at 6-11). The elements of a malicious prosecution claim are as follows: (1)

8

defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause;" (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007); see also Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).

Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. See Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). Whether the individual actually committed the crime or was acquitted of the charges is irrelevant to a probable cause examination. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).

Tereo avers that Office Smuck deliberately withheld exculpatory information from the affidavit of probable cause. (Doc. 1 ¶ 78). He further claims that Officer Smuck's affidavit of probable cause misled a court into issuing a warrant for his arrest. (Id. ¶¶ 79-82). To satisfy Rule 12(b)(6), Tereo must plead sufficient facts to plausibly establish that (1) Officer Smuck "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and (2) "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 369, 399 (3d Cir. 1997)). Omissions are made with reckless disregard when an officer excludes facts

within his knowledge that are the type which a reasonable person would know that

the warrant issuing judge would want to know. <u>Andrews v. Scuilli</u>, 593 F.3d 690, 698

(3d Cir. 2017).

Tereo has alleged that the affidavit of probable cause excluded material

exculpatory evidence, including:

> a. Identification of evidence obtained by Officer Bowser during his investigation, i.e., witness statements, and the fact that a surveillance video of the incident existed but had gone missing;
>
> b. That Officer Bowser and the Sunoco employees who viewed the missing surveillance video would say that the video evidence undermined Johnson's claim that Tereo approached Johnson from behind;
>
> c. That Officer Bowser and the Sunoco employees who viewed the missing surveillance video would say that the video evidence undermined Johnson's claim that Tereo stuck his finger in Johnson's face;
>
> d. That Officer Bowser and the Sunoco employees who viewed the missing surveillance video would say that the video evidence undermined Johnson's claim that Tereo "slammed" Johnson to the ground;
>
> e. That Officer Bowser and the Sunoco employees who viewed the missing surveillance video would say that the video evidence undermined Johnson's claim that after Johnson got up from the ground, Tereo "charged him";
>
> f. That Officer Bowser and the Sunoco employees who viewed the missing surveillance video would say that the video evidence undermined Johnson's claim that Tereo spit in Johnson's face;
>
> g. That the initial female target of Johnson's harassment was a regular customer of Sunoco, and thus a witness statement could be obtained;

h. That the Leffler fuel company employee would say that Johnson was the aggressor, and that Tereo acted in self-defense and in defense of Tammy Reynolds;

i. That Sunoco employee, Tammy Reynolds, would say that Johnson was the aggressor, and that Tereo acted in self-defense and in defense of her; and

j. That Sunoco employee, Alice Crawley, would say that she told Johnson on three separate occasions to leave Sunoco and to not return, and that Johnson only harassed females.

(Doc. 1 ¶ 78). According to Tereo, Officer Smuck fully reviewed the original investigating officer's file and ostensibly was aware of the wealth of exculpatory information therein. (See id. ¶¶ 36, 68, 78, 80-82).

Johnson's identification of Tereo as the alleged offender would usually be sufficient to establish probable cause. See Wilson, 212 F.3d at 790. However, a positive identification by a victim may be outweighed by independent exculpatory evidence. Id. Third Circuit jurisprudence mandates that an officer may not exclude exculpatory evidence from an affidavit of probable cause, "even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." Andrews, 853 F.3d at 699 (quoting Dempsey v. Bucknell Univ., 834 F.3d 457, 469 (3d Cir. 2016)). When a plaintiff establishes improper omissions, district courts must reconstruct the challenged affidavit. Dempsey, 834 F.3d at 470.

The omissions cited by Tereo are the type which a reasonable person would recognize that the judge would want to know because they are plainly exculpatory. See Andrews, 853 F.3d at 699. Therefore, the court must reconstruct Officer Smuck's affidavit to determine whether the omissions were material to a finding of

probable cause.  <u>Dempsey</u>, 834 F.3d at 470.  The reconstructed affidavit reads as

follows, with additions in italics:

> On 11/19/2013 at 1505 hours Officer James Bowser of the Stewartstown Police Department was dispatched to the Sunoco Gas Station located at 62 N. Main St. in Stewartstown Borough for an assault.
>
> *The Stewartstown Police Department closed at the end of 2013 and Stewartstown contracted with the Southern Regional Police Department for police services beginning in January 2014.  I took over Officer Bowser's investigation concerning the Johnson assault on 01/18/14.  I did not interview Officer Bowser regarding his investigation concerning the Johnson assault.*
>
> On 01/18/2014 I met with the victim Carl Johnson and his wife at their residence.  Carl Johnson advised the following:  He stated that he was at the Sunoco filling his vehicle with gasoline when a female in her 20's pulled in next to Johnson and had a "lit cigarette in her mouth." Johnson asked her to extinguish the cigarette because he was pumping gasoline and advised of the no smoking signs.  Johnson felt that she did not hear him or ignored him.  He said that she then placed the cigarette in the ash stand and entered the store.  About 2-3 minutes later the same female exited the store and Johnson was still pumping gasoline.  Johnson walked over to the female and told her she should have put the cigarette out and "reminded her that she was in a no smoking zone." Johnson reported that the store clerk then exited the store and asked him not to be harassing the customers and requested that he leave.  At the same time Johnson reported that a "young man" came from behind him and started to threaten him, stating that he would smash Johnson's face in for harassing a woman in his presence.  Johnson[ ]reported that the male subject started "sticking his finger in Johnson's face" and stated "old man I'll push your [f******] face in" and then pushed Johnson hard enough to "slam him extremely into the ground" which is concrete pavement.  Johnson stated that he was stunned and unable to get up immediately.  After Johnson was able to get back up he stated that the man charged him again, "got right in my face saying he had something else

for me", and he "blew spit in my face." Johnson stated that the man continued to threaten him so Johnson went to the Leffler Fuel Co. 911 was called by his wife after Leffler Oil refused to help him. Johnson stated that he attempted to get the license plate off the car but the male blocked his view and threatened him again. Johnson stated that the male subject got into a small gray or green car and left while the store clerk told him to "get out and stay away."

Johnson was transported by ambulance to Memorial Hospital ED for evaluation and treatment. Medical records from Memorial Hospital showed the following diagnosis for Johnson: Assault, rib fracture - 1 rib closed, cervical strain, head injury - superficial, chest wall contusion, and hip strain.

*Following my interview with Johnson and his wife, I located Officer Bowser's investigative file, which included notes, a written statement from Johnson, pictures printed from a surveillance system, an officer's daily log, and Johnson's medical records. A clerk from the Sunoco advised me that a copy of Sunoco's surveillance video of the 11/19/2013 incident had been provided to Officer Bowser. I could not locate a copy of the video, and Sunoco no longer had the original copy of the video. According to the Sunoco employees who had viewed the surveillance video, the video did not support certain aspects of Johnson's account of the incident specifically that TEREO approached Johnson from behind, stuck his finger in Johnson's face, slammed Johnson to the ground, charged Johnson after he got up from the ground, and spit in Johnson's face. I also interviewed Sunoco employees Alice Crowley and Tammy Reynolds who were present on the day of the 11/19/2013 incident. Reynolds, who witnessed the incident, stated that Johnson was the aggressor and that TEREO acted in self-defense and in defense of her. Reynolds corroborated that TEREO pushed Johnson. Crowley stated that she had told Johnson on three separate occasions to leave the Sunoco and not to return. According to Crowley, Johnson only harassed females. Reynolds and Crowley confirmed that the initial female target of Johnson's harassment was a regular customer of Sunoco, but they did not know her identity. I did not identify this female witness or obtain her statement. I interviewed Leffler Fuel employee, Dan Lyttle. Lyttle*

13

*stated that Johnson was the aggressor and TEREO acted in self-defense and in defense of Reynolds.*

On 01/27/2014 a photo of the suspect and vehicle were released to the media and placed on the department Facebook page for identification.

I received an anonymous call on 01/28/2014 from an anonymous caller stating she believed the person in the surveillance photo was Eric TEREO and that he also has a similar vehicle. Another person also gave the same information via tip line.

York Area Regional Police were sent to TEREO's last known address (Crestview Dr.) and TEREO never contacted me. I was also given several cell phone numbers for TEREO but he never returned my phone call. TEREO also deactivated or blocked his Facebook account the same day I sent York Area Regional PD to the address listed on his driver's license.

On 02/11/2014 victim Carl Johnson and his wife appeared at the police station for follow up. A photo lineup was displayed to Johnson and he identified Eric TEREO as the one who assaulted him at the gas station.

Johnson reported that he is having ongoing medical issues as a result of the assault which include chronic left shoulder pain/problems and chronic protruding left rib and pain (rib that was fractured as a result of this incident).

TEREO currently has a warrant issued for disorderly conduct and has not returned any of my phone calls. Based on this information I am requesting a warrant of arrest be issued for Eric Dennis TEREO.

(See Doc. 15 at 8-12).

The reconstructed affidavit reveals that Officer Smuck excluded information which suggests that Johnson was the aggressor and Tereo acted either in self-defense or defense of Reynolds. Some courts within this circuit have suggested

14

that perceived affirmative defenses, such as self-defense, need not be included in affidavits of probable cause. <u>See</u>, <u>e.g.</u>, <u>Gorman v. Bail</u>, 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013). But the Third Circuit Court of Appeals has not made such a broad pronouncement. <u>See</u> <u>Holman v. City of York</u>, 564 F.3d 225, 231 (3d Cir. 2009). *Per contra*, the Third Circuit has stressed that probable cause analysis requires consideration of a totality of the circumstances paired with a "common sense approach." <u>Goodwin v. Conway</u>, 836 F.3d 321, 327 (3d Cir. 2016). When the court's review divulges independent and reliable exculpatory evidence known by the charging officer, such evidence may outweigh or undermine the incriminating evidence which, standing alone, established probable cause. <u>See</u> <u>Andrews</u>, 853 F.3d at 699 (quoting <u>Dempsey</u>, 834 F.3d at 469).

Based upon this legal framework, the court concludes that Officer Smuck's omissions could be material to a finding of probable cause. Not only do the omitted facts suggest that Tereo's actions were justified, but they also severely undermine Johnson's reliability. The warrant issuing judge may have weighed the exculpatory evidence against Johnson's statements and determined that the reconstructed affidavit did not establish probable cause. A determination that probable cause necessarily existed would be premature in the absence of a fully-developed factual record. <u>Cf.</u> <u>Watson v. Witmer,</u> 183 F.Supp.3d 607, 613 (M.D. Pa. 2016) (citing <u>Toribio v. Spece</u>, No. 3:10-CV-2441, 2011 WL 6027000, at *3 (M.D. Pa. Dec. 5, 2011); <u>Alassani v. Walter</u>, No. 10-4491, 2011 WL 135018, at *5 (E.D. Pa. Jan. 14, 2011)). Accordingly, Tereo's malicious prosecution claim survives Rule 12(b)(6) scrutiny.

## b. __Qualified Immunity__

Officer Smuck additionally asserts that he is entitled to qualified immunity. (Doc. 11 ¶ 7). Qualified immunity protects a state actor who has committed constitutional violations if the plaintiff's rights were not clearly established when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable state actor could have believed that the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The doctrine generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: *first*, whether, based on the facts alleged, a constitutional right has been violated and, *second*, if so, whether the right was "clearly established" at the time of the alleged violation. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). The court has determined that Tereo

pleads sufficient facts to plausibly establish that his constitutional rights were violated. Accordingly, we proceed to the clearly established prong.

A court must "frame the precise contours" of the right at issue before determining whether that right is clearly established. Spady, 800 F.3d at 638. A Section 1983 plaintiff need not produce a directly analogous case to prove that a right is clearly established, but there must exist Supreme Court precedent or a "robust consensus of cases of persuasive authority" at the time of the challenged conduct to "place[] the . . . constitutional question beyond debate." Taylor v. Barkes, 575 U.S. ___, 135 S. Ct. 2042, 2044 (2015) (*per curiam*). Our ultimate inquiry is whether the state of the law at the time of the alleged violation gave the defendant "fair warning" that his conduct was unconstitutional. L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 248 (3d Cir. 2016).

Explicit Third Circuit precedent answers this inquiry in the affirmative. As the Third Circuit recently pronounced, it is beyond debate that the right to be free from arrest except upon probable cause is clearly established. Andrews, 853 F.3d at 705 (quoting Donahue v. Gavin, 280 F.3d 371, 380 (3d Cir. 2002); Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)). In light of this authority, it would be clear to a reasonable actor that Officer Smuck's conduct was unlawful. Id. (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Officer Smuck is not entitled to qualified immunity at this juncture.

## 2. *Municipal Liability Claim Against Southern Regional Police Department*

Tereo claims that Southern Regional Police Department "failed to implement policies, practices, and training regarding how to protect an individual's" civil rights. (Doc. 1 ¶ 98). In response, defendants submit that Tereo has not asserted sufficient factual averments to support his allegations. (Doc. 11 ¶ 6).

Municipal liability arises when a governmental entity causes an employee to violate another's constitutional rights by an official custom or policy. See Monell, 436 U.S. at 690-94; Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability, plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). A policy exists "when a decisionmaker possess[ing] final authority to establish . . . [public] policy with respect to the action issues an official proclamation, policy or edict." Id. at 584 (quoting Kneipp, 95 F.3d at 1212). A custom is "an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Id. (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). A plaintiff proceeding on an unofficial custom theory must allege facts tending to establish that "the [municipality] knew of a pattern of constitutional violations or that such consequences were so obvious the [municipality's] conduct can only be described as deliberate indifference." Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009).

A municipality may be held liable for constitutional violations that result from inadequate training of its employees if the failure to train constitutes a custom of the municipality. Connick v. Thompson, 563 U.S. 51, 61 (2011). The failure must reflect "deliberate indifference to the [constitutional] rights of persons with whom the police come into contact." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1028 (3d Cir. 1991) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). A showing of deliberate indifference requires that "(1) municipal policymakers know that employee will confront a particular situation; (2) the situation involves a difficult choice or a history of employee[] mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Ordinarily, plaintiffs must show a "pattern of similar [constitutional] violations" to prove deliberate indifference in the failure to train context. Connick, 563 U.S. at 63. However, the Supreme Court has indicated that a single incident may evince deliberate indifference when "the need to train officers . . . can be said to be so obvious" in itself and the lack thereof would perforce lead to recurrent rights violations. City of Canton, 489 U.S. at 390 n.10; see also Thomas v. Cumberland Cty., 749 F.3d 217, 223-25 (3d Cir. 2014).

The complaint lacks *allegata* to undergird Tereo's claim that Southern Regional Police Department failed to comport with requisite training standards and internal policies. (See Doc. 1 ¶¶ 88-105). The pleading permits no inference that Southern Regional Police Department issued "an official proclamation, policy[,] or edict" relieving employees or supervisors of their obligation to comply training or internal obligations. See Natale, 318 F.3d at 584. Nor does Tereo allege that

19

noncompliance with said training and internal policies was prevalent, recurring, and silently sanctioned by department decisionmakers. See id. Tereo's assertions are mere legal conclusion which fail to evince a "pattern" of known constitutional violations amounting to an unofficial department custom. See Pelzer, 656 F. Supp. 2d at 533. Without specific facts relating the asserted constitutional harm to an established municipal policy or custom, the court must dismiss Tereo's Monell claim against Southern Regional Police Department. Because this claim is factually rather than legally flawed, dismissal will be without prejudice. See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.

## B. State Law Claim Against Officer Smuck

Tereo asserts a state law claim for malicious prosecution against Officer Smuck in his individual capacity. (Doc. 1). Defendants argue that the existence of probable cause precludes this claim. (Doc. 11 ¶ 5). Alternatively, defendants posit that official statutory immunity bars this claim. (Id. ¶¶ 7-9).

### 1. *State Law Claim for Malicious Prosecution*

A claim of malicious prosecution requires a plaintiff to demonstrate that: (1) defendant initiated a criminal proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) defendant initiated the proceeding without probable cause; and (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice. See Donahue, 280 F.3d at 379 (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)).

Defendants argue that Officer Smuck had probable cause to arrest Tereo for pushing Johnson, thereby precluding liability for malicious prosecution. (Doc. 23 at

6-11; Doc. 15 at 2-13). Courts measure the existence of probable cause against the same standards whether the claim originates under state or federal law. <u>DeBellis v. Kulp</u>, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001) (citing <u>Renk</u>, 641 A.2d at 293). The court's probable cause assessment anent Tereo's Section 1983 claim applies with equal force to the state law claim. <u>See</u> Part III.A.1.a. Accordingly, the court will deny defendants' motion to dismiss Tereo's state law claim on this ground.

### 2.  *Official Immunity*

The Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. § 8541 *et seq.*, immunizes local agencies from liability "for damage on account of any injury to a person or property caused by any act of the local agency or any employee thereof . . . ." <u>Id.</u> § 8541. This governmental immunity extends to employees of local agencies for acts taken "within the scope of [the employee's] office or duties." <u>Id.</u> § 8545. The Act exempts from its scope any agency or employee whose injurious act "constituted a crime, actual fraud, actual malice[,] or willful misconduct." <u>Id.</u> § 8550. Pennsylvania courts apply a subjective standard to police officers to determine whether the willful misconduct exception applies. <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293-94 (Pa. 1994); <u>see</u> <u>also</u> <u>Basile v. Twp. of Smith</u>, 752 F. Supp. 2d 643, 669 (W.D. Pa. 2010) (citing <u>Brockington v. City of Phila.</u>, 354 F. Supp. 2d 563, 571 (E.D. Pa. 2005)). That is, a police officer must have understood that the tortious action is illegal and intended to commit it nonetheless. <u>See</u> <u>In re</u> City of Phila. Litig., 158 F.3d 723, 728 (3d Cir. 1998).

In the instant matter, the Pennsylvania Political Subdivision Tort Claims Act may not shield Officer Smuck with respect to the state law claim. Malicious prosecution constitutes an intentional tort. See Cruz *ex rel.* Alvarez v. City of Phila., No. 07-493, 2008 WL 4347529, at *10 (E.D. Pa. Sept. 23, 2008) (citing Gines v. Bailey, No. 92-4170, 1992 WL 394512, at *5 (E.D. Pa. Dec. 29, 1992)). This claim *ex proprio vigore* establishes that Officer Smuck's alleged conduct was knowing and intentional. Tereo's allegations, if proven, are sufficient to establish that Officer Smuck engaged in willful misconduct, thereby abrogating statutory immunity. See, e.g., Basile, 752 F. Supp. 2d at 669-70; Walker v. N. Wales Borough, 395 F. Supp. 2d 219, 231 (E.D. Pa. 2005). Officer Smuck is not entitled to official immunity at this stage of the litigation.

## IV. **Conclusion**

The court will grant in part and deny in part defendants' motion (Doc. 11) to dismiss.[1] An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    May 15, 2017

---

[1] Also pending before the court is defendants' motion (Doc. 24) for sanctions against Tereo and his counsel, Attorney Devon M. Jacob. Defendants assert that Tereo's claims are frivolous based on the perceived existence of probable cause. (Id. ¶¶ 22-23). In light of our analysis *supra*, the court will deny the motion for sanctions.