**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC D. TEREO,** | : | **CIVIL ACTION NO. 1:16-CV-1436** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DARRYL L. SMUCK, II, and THE** | : | |
| **SOUTHERN POLICE COMMISSION,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Eric D. Tereo ("Tereo") brings this action against defendants Darryl L. Smuck, II ("Officer Smuck") and the Southern Police Commission (collectively, "defendants") pursuant to 42 U.S.C. § 1983 and state law. (<u>See</u> Doc. 42). Before the court are the parties' cross-motions (Doc. 43, 46) for summary judgment. The court will deny Tereo's motion, and will grant in part and deny in part defendants' motion.

## I.    <u>**Factual Background & Procedural History**</u>[1]

The instant matter arises from a physical altercation between non-party Carl

Johnson, Sr. ("Johnson") and Tereo that occurred on November 19, 2013 at the

Sunoco gas station in Stewartstown, Pennsylvania. (<u>See</u> Doc. 44-4 at 2; Doc. 48-7,

Preliminary Hr'g Tr., 5:7-24, Mar. 20, 2014 ("Hr'g Tr."); Doc. 48-10, Tereo Dep.,

18:19-24, June 26, 2017 ("Tereo Dep.")).  Johnson and Tereo's accounts of the

incident diverge considerably.

According to Johnson, he went to the Sunoco station on the afternoon

of November 19 to purchase gas. (Hr'g Tr. 5:25-6:3; Doc. 44-7, Criminal Trial Tr.,

Part I, 59:25-60:11, Mar. 12, 2015 ("Trial Tr., Part I")).  While filling up his gas tank,

Johnson noticed a young woman smoking a cigarette. (Hr'g Tr. 6:6-15; Trial Tr.,

Part I 61:11-25).  He asked the woman to stop but she continued to smoke. (Hr'g Tr.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  <u>See</u> <u>id.</u>  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (<u>See</u> Docs. 44, 47, 52, 53 at 1-12).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

In addition to providing responses to each paragraph in defendants' statement of material facts, Tereo's statement of material facts includes a section styled as "Plaintiff's Statement of Additional Material and Undisputed Facts." (Doc. 53 at 12-26).  Neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 authorizes this portion of his filing, and Tereo did not request leave of court therefor.  Nevertheless, the court has considered and scrutinized this supplemental information as well as the entire record to determine the uncontroverted facts of this matter.

6:15-7:1; Trial Tr., Part I 61:25-62:15). The woman eventually left her cigarette and went inside the store. (Hr'g Tr. 7:2-8; Trial Tr., Part I 62:16-25, 71:2-12). Before Johnson finished filling up his gas tank, the woman walked out of the store followed by Sunoco employee Tammy Reynolds ("Reynolds"). (See Hr'g Tr. 7:9-13; Trial Tr., Part I 63:1-4). Reynolds asked Johnson to leave the Sunoco station and accused him of "antagonizing and aggravating . . . customers." (Hr'g Tr. 7:14-17; see also Trial Tr., Part I 63:1-8). As Johnson tried to explain what happened, an unknown male, later identified as Tereo, got out of his car and walked toward Johnson and Reynolds. (See Hr'g Tr. 8:4-11; Trial Tr., Part I 64:4-65:10). Johnson testified that Tereo "grabbed" him from behind and threw him onto the "hard pavement." (See id. at 8:6-14, 14:14-25; see also Trial Tr., Part I 64:24-65:24, 84:20-85:5). After Johnson stood up, Tereo spit in his face. (Hr'g Tr. 8:24-9:10, Trial Tr., Part I 66:25-67:5). Johnson asked an employee from a neighboring business to call law enforcement, but the employee declined. (See Hr'g Tr. 9:15-22; Trial Tr., Part I 67:6-20, 82:17-24). Ultimately, Johnson used his cell phone to call his wife, who called 9-1-1. (See Hr'g Tr. 10:1-10, 17:10-24; Trial Tr., Part I 67:25-68:1, 82:7-10, 82:14-16).

According to Tereo, he got involved in the conversation between Johnson and Reynolds to help Reynolds. (See Tereo Dep. 29:10-22, 60:12-23, 62:4-11; Doc. 48-8, Criminal Trial Tr., Part II, 150:22-151:10, Mar. 12, 2015 ("Trial Tr., Part II")). He admits to pushing Johnson but claims that he did so to defend himself and Reynolds. (See Tereo Dep. 52:2-12, 52:16-54:22; Trial Tr., Part II 151:11-152:13; 154:9-155:4, 159:16-19, 162:7-15). He denies pushing Johnson from behind or

spitting at him. (See Tereo Dep. 39:25-40:4, 75:9-12, 79:2-11; 79:20-80:11). He also states that he did not see Johnson hit his head on the ground. (Id. at 59:14-25). Tereo maintains that surveillance video—if it could be found—would verify his account of the incident. (See id. at 39:25-40:4, 75:9-12, 79:2-11, 79:20-80:11).

Johnson reported the incident to James Bowser ("Officer Bowser") with the Stewartstown Police Department after law enforcement arrived. (Doc. 36 ¶ 31; Doc. 37 ¶ 31; see also Doc. 44 ¶ 8; Doc. 53 ¶ 8; Trial Tr., Part I 68:21-25, 89:2-11). Officer Bowser also interviewed Reynolds and Crowley but there is no written record of what they told him. (See Trial Tr., Part II 122:11-124:15; Doc. 48-2, Reynolds Aff. ¶¶ 3-4, July 13, 2017 ("Reynolds Aff."); Doc. 48-3, Crowley Aff. ¶¶ 3-7, July 13, 2017 ("Crowley Aff.")). Both women maintain that they told Officer Bowser that Johnson was the "aggressor." (Reynolds Aff. ¶ 4; Crowley Aff. ¶¶ 4-5). Tereo left the Sunoco station before law enforcement arrived and thus did not speak with Office Bowser. (Trial Tr., Part II 158:8-20). It is undisputed that Johnson did not get physical with either Reynolds or Tereo. (Tereo Dep. 93:24-94:6). It is also undisputed that Johnson, who was 76 years old at the time, went to the hospital after the incident and was treated for the following injuries: rib fracture, cervical strain, superficial head injury, chest wall contusion, and hip strain. (See Doc. 44-4 at 2; see also Hr'g Tr. 10:8-11:22; Tereo Dep. 59:19-23; Trial Tr., Part I 69:1-19, 70:3-4).

The Stewartstown Police Department closed at the end of 2013, at which time the borough of Stewartstown contracted with the Southern Regional Police Department for law enforcement services. (Doc. 44 ¶ 5; Doc. 47 ¶ 1, Doc. 52 ¶ 1; Doc. 53 ¶ 5). The Southern Regional Police Department is governed by the Southern

Police Commission. (Doc. 47 ¶ 34; Doc. 52 ¶ 34; see also Doc. 48-8). The Southern Regional Police Department's Code of Conduct states, *inter alia*, that law enforcement officers must have "good and sufficient probable cause" to make an arrest, as well as conduct "proper, thorough[,] and complete investigation[s]." (Doc. 47 ¶ 38; Doc. 52 ¶ 38; see also Doc. 48-9).

On January 18, 2014, Doris Johnson called Officer Smuck—a sergeant with the Southern Regional Police Department—regarding the incident between her husband and Tereo. (Doc. 44 ¶¶ 2, 7; Doc. 53 ¶¶ 2, 7). In response to the phone call, Officer Smuck commenced his own investigation into the matter and met with Johnson and his wife in their home later that same day. (Doc. 44 ¶¶ 9, 11-13; Doc. 53 ¶¶ 9, 11-13). At some point during the meeting, Johnson gave Officer Smuck a typed written statement detailing the incident from his perspective. (Doc. 44 ¶ 15; Doc. 53 ¶ 15; see also Doc. 44-5 at 18-21). Officer Smuck did not communicate with Officer Bowser at any point during his investigation, but he did "obtain[] documents and evidence" from Officer Bower's desk, to wit: "photographs from a surveillance video," a "working case log," a written statement from Johnson, and Johnson's medical records. (Doc. 44 ¶¶ 10, 16; Doc. 53 ¶¶ 10, 16). Shortly thereafter, Officer Smuck interviewed Reynolds and Sunoco employee Alice Crowley ("Crowley"). (See Doc. 44 ¶ 19; Doc. 47 ¶ 7; Doc. 52 ¶ 7; Doc. 53 ¶ 19). Officer Smuck did not take notes during the interviews or take written statements from Reynolds or Crowley. (See Hr'g Tr. 24:22-25:5; Doc. 48-1, Smuck Dep., 9:9-10:9, July 19, 2017 ("Smuck Dep.")). Reynolds identified the man who pushed Johnson from one of the surveillance photographs. (Doc. 44 ¶ 27; Doc. 53 ¶ 27).

On January 27, 2014, the Southern Regional Police Department posted the photograph on its Facebook page in an attempt to ascertain the then-unknown man's identity. (Doc. 44 ¶ 30; Doc. 53 ¶ 30; see also Doc. 44-9). Three individuals responded and identified Tereo as the man in the photograph. (See Doc. 44 ¶¶ 31-32; Doc. 53 ¶¶ 30-31). Approximately two weeks later, Johnson identified Tereo as the man who pushed him in a photo array. (Doc. 44 ¶ 34; Doc. 53 ¶ 33; see also Doc. 44-10). Officer Smuck prepared and filed a criminal complaint against Tereo the next day. (Doc. 44 ¶ 35; Doc. 53 ¶ 34; see also Docs. 44-11, 48-6). The criminal complaint charged Tereo with simple assault, disorderly conduct, and harassment in violation of Pennsylvania law. (Doc. 44 ¶ 35; Doc. 53 ¶ 34; see also Docs. 44-11, 48-6). The affidavit of probable cause attached to the criminal complaint described Officer Smuck's findings as follows:

> On 11/19/2013 at 1505 hours Officer James Bowser of the Stewartstown Police Department was dispatched to the Sunoco Gas Station located at 62 N. Main St. in Stewartstown Borough for an assault.
>
> On 01/18/2014 I met with the victim Carl Johnson and his wife at their residence. Carl Johnson advised the following: He stated that he was at the Sunoco filling his vehicle with gasoline when a female in her 20's pulled in next to Johnson and had a "lit cigarette in her mouth." Johnson asked her to extinguish the cigarette because he was pumping gasoline and advised of the no smoking signs. Johnson felt that she did not hear him or ignored him. He said that she then placed the cigarette in the ash stand and entered the store. About 2-3 minutes later the same female exited the store and Johnson was still pumping gasoline. Johnson walked over to the female and told her she should have put the cigarette out and "reminded her that she was in a no smoking zone." Johnson reported that the store clerk then exited the store and asked him not to be harassing the customers

and requested that he leave. At the same time Johnson reported that a "young man" came from behind him and started to threaten him, stating that he would smash Johnson's face in for harassing a woman in his presence. Johnson[ ]reported that the male subject started "sticking his finger in Johnson's face" and stated "old man I'll push your [f******] face in" and then pushed Johnson hard enough to "slam him extremely into the ground" which is concrete pavement. Johnson stated that he was stunned and unable to get up immediately. After Johnson was able to get back up he stated that the man charged him again, "got right in my face saying he had something else for me," and he "blew spit in my face." Johnson stated that the man continued to threaten him so Johnson went to the Leffler Fuel Co. 911 was called by his wife after Leffler Oil refused to help him. Johnson stated that he attempted to get the license plate off the car but the male blocked his view and threatened him again. Johnson stated that the male subject got into a small gray or green car and left while the store clerk told him to "get out and stay away."

Johnson was transported by ambulance to Memorial Hospital ED for evaluation and treatment. Medical records from Memorial Hospital showed the following diagnosis for Johnson: Assault, rib fracture - 1 rib closed, cervical strain, head injury - superficial, chest wall contusion, and hip strain.

On 01/27/2014 a photo of the suspect and vehicle were released to the media and placed on the department Facebook page for identification. I received an anonymous call on 01/28/2014 from an anonymous caller stating she believed the person in the surveillance photo was Eric TEREO and that he also has a similar vehicle. Another person also gave the same information via tip line. York Area Regional Police were sent to TEREO's last known address (Crestview Dr.) and TEREO never contacted me. I was also given several cell phone numbers for TEREO but he never returned my phone call. TEREO also deactivated or blocked his Facebook account the same day I sent York Area Regional PD to the address listed on his driver's license.

> On 02/11/2014 victim Carl Johnson and his wife appeared
> at the police station for follow up. A photo lineup was
> displayed to Johnson and he identified Eric TEREO as
> the one who assaulted him at the gas station.
> Johnson reported that he is having ongoing medical
> issues as a result of the assault which include chronic left
> shoulder pain/problems and chronic protruding left rib
> and pain (rib that was fractured as a result of this
> incident). TEREO currently has a warrant issued for
> disorderly conduct and has not returned any of my phone
> calls. Based on this information I am requesting a
> warrant of arrest be issued for Eric Dennis TEREO.

(Doc. 44-11 at 5-6; Doc. 48-6 at 4-5). The magistrate judge approved the charges against Tereo and issued a warrant for Tereo's arrest. (Doc. 44 ¶ 36; Doc. 53 ¶ 35; see also Doc. 44-12).

The York County Court of Common Pleas held a preliminary hearing on March 20, 2014 regarding the charges filed against Tereo. (Doc. 44 ¶ 38; Doc. 53 ¶ 38; see also Hr'g Tr. 1:12-15). The Commonwealth called Johnson and Officer Smuck as witnesses; the defense called none. (See Hr'g Tr. 4:14-17; 19:19-22). The magistrate judge found that the Commonwealth met its burden of establishing a *prima facie* case as to all charges against Tereo. (Doc. 44 ¶ 39; Doc. 53 ¶ 39; see also Hr'g Tr. 28:12-20). A jury trial was held on March 12, 2015. (See Trial Tr., Part I 46:1). The Commonwealth called Johnson, Reynolds, and Officer Smuck as witnesses, and the defense called Crowley and Tereo. (Trial Tr., Part I 58:7-16, 92:14-15; Trial Tr., Part II 118:1-11, 138:1-2, 147:15-17). At the conclusion of trial, Tereo was acquitted of all charges. (Doc. 47 ¶ 32; Doc. 52 ¶ 32).

Tereo commenced the instant action on July 11, 2016. Following Rule 12 motion practice, Tereo filed an amended complaint on June 4, 2017, and a second

amended complaint on September 15, 2017. Therein, Tereo asserts a malicious prosecution claim pursuant to 42 U.S.C. § 1983 against Officer Smuck (Count I), a <u>Monell</u> claim against the Southern Police Commission (Count II), and a state law malicious prosecution claim against Officer Smuck (Count III). Following a period of discovery, the parties filed the instant cross-motions for summary judgment, together with supporting papers. Both motions are fully briefed and ripe for disposition.

## II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. <u>See</u> <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008); <u>see also</u> <u>Johnson v. Fed. Express Corp.</u>, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.

2015).  When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III.  **Discussion**

Tereo asserts a malicious prosecution claim against Officer Smuck pursuant to Section 1983, a Monell claim against the Southern Police Commission, and a state law malicious prosecution claim against Officer Smuck.  We will address each claim *seriatim*.

### A.  **Section 1983**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  There is no dispute that defendants are state actors for purposes of Section 1983.  We thus consider only whether defendants deprived Tereo of his constitutional rights.

### 1.    *Malicious Prosecution Claim*

Tereo avers that Officer Smuck maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Officer Smuck invokes the doctrine of qualified immunity in response to this claim. The court will address Tereo's federal malicious prosecution claim through the prism of the qualified immunity doctrine.

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the

alleged violation.  <u>Spady v. Bethlehem Area Sch. Dist.</u>, 800 F.3d 633, 637 (3d Cir.

2015) (quoting <u>Pearson</u>, 555 U.S. at 232).  A court may begin its qualified immunity

analysis with either prong.  <u>See</u> <u>Pearson</u>, 555 U.S. at 237.  The parties appropriately

do not dispute the second prong: as we held at the Rule 12 stage, the right to be free

from arrest except upon probable cause is clearly established.  <u>Andrews v. Scuilli</u>,

853 F.3d 690, 705 (3d Cir. 2017) (quoting <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 483

(3d Cir. 1995)).  Hence, we need only determine whether the record establishes a

violation of that right.

The elements of a malicious prosecution claim are as follows: (1) defendant

commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's

favor; (3) defendant "initiated the proceeding without probable cause;" (4)

defendant acted maliciously or with a purpose apart from bringing plaintiff to

justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept

of seizure as a consequence of a legal proceeding." <u>Johnson v. Knorr</u>, 477 F.3d 75,

81-82 (3d Cir. 2007); <u>see</u> <u>also</u> <u>Henderson v. City of Phila.</u>, 853 F. Supp. 2d 514, 518

(E.D. Pa. 2012).  The parties *sub judice* dispute only the third element, *viz.*, whether

Officer Smuck had probable cause to arrest Tereo.[2]  (<u>See</u> Doc. 45 at 3-8, 17-18; Doc.

49 at 3-10; Doc. 51 at 1, 10-11; Doc. 54 at 3-11).

---

[2] Officer Smuck separately challenges Tereo's ability to satisfy the fourth
element.  (<u>See</u> Doc. 45 18-20).  This element also hinges on a finding of probable
cause.  <u>See</u> <u>Morales v. Busbee</u>, 972 F. Supp. 254, 261 (D.N.J. 1997); <u>see</u> <u>also</u> <u>Lippay
v. Christos</u>, 996 F. 2d 1490, 1502 (3d Cir. 1993); <u>Brookins v. Cuiffi</u>, No. 11-784, 2012
WL 1247154, at *6 (W.D. Pa. Mar. 19, 2012).

Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense.  See Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  Whether the individual actually committed the crime or was acquitted of the charge is irrelevant to a probable cause analysis. Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).  When a plaintiff alleges a constitutional violation based on material omissions from a probable cause affidavit, the plaintiff must establish *first*, that the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant," and *second*, that "such statements or omissions are material, or necessary, to the finding of probable cause."  Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 369, 399 (3d Cir. 1997)).

### a.    **Alleged Omissions**

Tereo contends that Officer Smuck "intentionally withheld . . . exculpatory evidence from the affidavit of probable cause," misleading the magistrate judge into issuing a warrant for his arrest.  (Doc. 49 at 7-8; see also Doc. 54 at 6, 8-10).  Tereo specifically alleges that Officer Smuck excluded the following material exculpatory evidence from the affidavit of probable cause:

- Evidence obtained by Officer Bowser during his investigation, including: witness statements, and the fact that a surveillance video of the incident may have existed;

- The fact that "the initial female target of Johnson's harassment" was a regular Sunoco customer and could have been interviewed;

- Reynolds and Crowley told Officer Smuck that Johnson was the aggressor;

- Statements from Reynolds regarding, *inter alia*, prior incidents concerning Johnson at the Sunoco station, the fact that she believed Tereo confronted Johnson to help her, that Tereo did not push Johnson from behind, and that Johnson was the "aggressor;"

- Statements from Crowley regarding, *inter alia*, what Reynolds told her about the incident, the fact that Crowley observed Johnson behaving "angrily" in the Sunoco parking lot on the day of the incident, and that Johnson had "acted aggressively" towards her on previous occasions.

(See Doc. 42 ¶ 86). Officer Smuck counters that he did not withhold exculpatory evidence and argues in the alternative that, assuming *arguendo* that he omitted exculpatory evidence, the omitted exculpatory evidence "would not vitiate probable cause."[3] (Doc. 45 at 17; see also Doc. 51 at 4-10, 11).

A thorough review of the record reveals that genuine issues of material fact remain regarding the extent of exculpatory evidence Officer Smuck knew of at the time he submitted the affidavit of probable cause. For example, although Officer

_____

[3] Defendants also contend: (1) that the record establishes that Officer Smuck had probable cause to arrest Tereo, (see Doc. 45 at 3-6), and (2) that we should view the magistrate judge's decision at the preliminary hearing to "hold over criminal charges" for trial as "'weighty evidence' that probable cause existed" because the magistrate judge was presented with the "the allegedly withheld exculpatory evidence," (Doc. 45 at 6-8). As explained *infra*, we disagree that the current record establishes that Officer Smuck had probable cause to arrest Tereo. We also disagree as to the relevance of the magistrate judge's finding of probable cause in light of the fact that neither Reynolds nor Crowley testified at the preliminary hearing. (See generally Hr'g Tr.).

Smuck interviewed Reynolds and Crowley prior to the submission of the affidavit, there is no written record of what they told him during their initial interviews. (See Hr'g Tr. 24:22-25:5). Reynolds and Crowley maintain that they provided Officer Smuck with the "same information" that they "testified to during [Tereo's] criminal trial," (Reynolds Aff. ¶¶ 18-20; Crowley Aff. ¶¶ 20-22), but *what* they told Officer Smuck and *when* was not at issue during that proceeding, (see generally Trial Tr., Part I 92:17-116:15; Trial Tr., Part II 138:4-147:14). Further, in his deposition testimony, Officer Smuck identified "some discrepancies" between what Reynolds told him during the investigation and what she testified to at trial. (Smuck Dep. 32:7-16, 38:4-39:25). He states, for instance, that he does not "recall [Reynolds] ever saying that [Johnson] was aggressive." (Smuck Dep. 38:21-39:3). However, at the preliminary hearing, Officer Smuck responded affirmatively when asked whether Reynolds and Crowley talked about Johnson "being the aggressor. (Hr'g Tr. 25:6-8). Determining what exculpatory evidence Officer Smuck knew of when he submitted the affidavit of probable cause requires credibility determinations that are the province of the jury and not this court.[4]

---

[4] The parties do not fully explore whether the alleged omissions were made knowingly, deliberately, or with reckless disregard for the truth. Omissions are made with reckless disregard when an officer excludes facts within his knowledge that are the type which a reasonable person would know that the warrant issuing judge would want to know. Andrews v. Scuilli, 853 F.3d 690, 698 (3d Cir. 2017). Here, as explained *supra*, questions of fact remain as to what exculpatory evidence Officer Smuck knew at the time he submitted the affidavit of probable cause. We find that the omissions cited by Tereo, assuming *arguendo* they could be established at trial, are of the type which a reasonable person would recognize that the judge would want to know because they are plainly exculpatory. See Andrews, 853 F.3d at 699. For example, the affidavit of probable cause outlines the incident solely from the perspective of Johnson and fails to include any of the information allegedly

### b.  **Materiality**

We must also determine whether the alleged omissions were material to the finding of probable cause.  As we acknowledged at the Rule 12 stage, Johnson's identification of Tereo as the alleged offender would ordinarily be sufficient to establish probable cause.  See Wilson, 212 F.3d at 790.  But a positive identification by a victim may be outweighed by independent exculpatory evidence.  Id.  Third Circuit jurisprudence mandates that an officer may not exclude exculpatory evidence from an affidavit of probable cause, "even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."  Andrews, 853 F.3d at 699 (quoting Dempsey v. Bucknell Univ., 834 F.3d 457, 469 (3d Cir. 2016)).  Thus, we cannot conclude that the positive identification is dispositive as to the question of materiality in this case.

When a plaintiff establishes improper omissions, district courts must reconstruct the challenged affidavit to determine whether a reasonable jury could find the alleged omissions material to a finding of probable cause.  Dempsey, 834 F.3d at 470.  The reconstructed affidavit reads as follows, with additions in italics:

> On 11/19/2013 at 1505 hours Officer James Bowser of the Stewartstown Police Department was dispatched to the Sunoco Gas Station located at 62 N. Main St. in Stewartstown Borough for an assault.
>
> *The Stewartstown Police Department closed at the end of 2013 and Stewartstown contracted with the Southern Regional Police Department for police services beginning in January 2014.  On January 18, 2014, I took over Officer Bowser's investigation concerning the Johnson/Tereo*

gleaned from Officer Smuck's interviews with Reynolds and Crowley.  (See Doc. 44-4).  Accordingly, we find that summary judgment is inappropriate as to this element.

*matter but never spoke to or received any information from Bowser.*

On 01/18/2014 I met with the victim Carl Johnson and his wife at their residence. Carl Johnson advised the following: He stated that he was at the Sunoco filling his vehicle with gasoline when a female in her 20's pulled in next to Johnson and had a "lit cigarette in her mouth." Johnson asked her to extinguish the cigarette because he was pumping gasoline and advised of the no smoking signs. Johnson felt that she did not hear him or ignored him. He said that she then placed the cigarette in the ash stand and entered the store. About 2-3 minutes later the same female exited the store and Johnson was still pumping gasoline. Johnson walked over to the female and told her she should have put the cigarette out and "reminded her that she was in a no smoking zone." Johnson reported that the store clerk then exited the store and asked him not to be harassing the customers and requested that he leave. At the same time Johnson reported that a "young man" came from behind him and started to threaten him, stating that he would smash Johnson's face in for harassing a woman in his presence. Johnson[ ]reported that the male subject started "sticking his finger in Johnson's face" and stated "old man I'll push your [f******] face in" and then pushed Johnson hard enough to "slam him extremely into the ground" which is concrete pavement. Johnson stated that he was stunned and unable to get up immediately. After Johnson was able to get back up he stated that the man charged him again, "got right in my face saying he had something else for me," and he "blew spit in my face." Johnson stated that the man continued to threaten him so Johnson went to the Leffler Fuel Co. 911 was called by his wife after Leffler Oil refused to help him. Johnson stated that he attempted to get the license plate off the car but the male blocked his view and threatened him again. Johnson stated that the male subject got into a small gray or green car and left while the store clerk told him to "get out and stay away."

Johnson was transported by ambulance to Memorial Hospital ED for evaluation and treatment. Medical records from Memorial Hospital showed the following diagnosis for Johnson: Assault, rib fracture - 1 rib closed,

cervical strain, head injury - superficial, chest wall contusion, and hip strain.

*I located Officer Bowser's investigative file, which included notes, a written statement from Johnson, pictures printed from a surveillance system, an officer's daily log, and Johnson's medical records.*

*A clerk from the Sunoco advised me that a copy of Sunoco's surveillance video of the 11/19/2013 incident had been provided to Officer Bowser.  I could not locate a copy of the video, and Sunoco no longer had the original copy of the video.*

*I interviewed Tammy Reynolds, who advised me of the following: Reynolds works as a cashier at the Sunoco.  On several occasions, Johnson had been to the Sunoco, "ranting and raving," and being "hostile" and "aggressive" toward Reynolds.  Reynolds told Johnson not to return to the Sunoco but Johnson ignored this direction.  On November 19, 2013, Reynolds witnessed Johnson harassing customers.  Reynolds told Johnson to stop harassing customers, and to leave the Sunoco and not return.  Instead of leaving, Johnson got in Reynold's face, gesturing with his hands.  A "gentleman [Tereo] came up to help me," and pushed Johnson back.  Tereo did not come up behind Johnson and slam Johnson to the ground; rather, Tereo positioned himself between Reynolds and Johnson. Reynolds believed that Tereo was trying to protect her.  Tereo pushed Johnson back, and Johnson lost his balance on a small step and fell. It is Reynold's belief that Tereo pushed Johnson to get him out of her face.  Johnson got up and got in Tereo's face and started giving him a hard time.  Reynolds never heard Tereo threaten to "smash" Johnson's face in.  Reynolds believed that Johnson was the aggressor.*

*I interviewed Alice Crowley, who advised me of the following: On November 19, 2013, Reynolds told her that Johnson had returned to the store again, made a scene, and was refusing to leave.  Crowley observed Johnson in the parking lot acting "belligerently, angrily" and "yelling at people," "waving his arms, walking around the parking lot yelling."  Crowley told Johnson to leave, and Johnson got in her face, yelling.  Johnson got "very close" to Crowley's face. So close, that he was spitting on her while screaming.*

*Johnson was yelling "[f***] you," and at times was incoherent. Johnson had acted aggressively toward Crowley on previous occasions. During one of the prior incidents, she feared for her safety and threatened to call the police. Crowley has witnessed Johnson act in this aggressive manner toward other customers. In one instance, Johnson caused a female customer to cry. Crowley has only seen Johnson act aggressively toward women.*

*I did not identify the female witness who was the initial target of Johnson's harassment, or obtain her statement.*

On 01/27/2014 a photo of the suspect and vehicle were released to the media and placed on the department Facebook page for identification. I received an anonymous call on 01/28/2014 from an anonymous caller stating she believed the person in the surveillance photo was Eric TEREO and that he also has a similar vehicle. Another person also gave the same information via tip line. York Area Regional Police were sent to TEREO's last known address (Crestview Dr.) and TEREO never contacted me. I was also given several cell phone numbers for TEREO but he never returned my phone call. TEREO also deactivated or blocked his Facebook account the same day I sent York Area Regional PD to the address listed on his driver's license.

On 02/11/2014 victim Carl Johnson and his wife appeared at the police station for follow up. A photo lineup was displayed to Johnson and he identified Eric TEREO as the one who assaulted him at the gas station. Johnson reported that he is having ongoing medical issues as a result of the assault which include chronic left shoulder pain/problems and chronic protruding left rib and pain (rib that was fractured as a result of this incident).

> TEREO currently has a warrant issued for disorderly conduct and has not returned any of my phone calls. Based on this information I am requesting a warrant of arrest be issued for Eric Dennis TEREO.

(Doc. 49 at 5-7; <u>see</u> <u>also</u> Doc. 54 at 6-8).[5]

The reconstructed affidavit reveals that Officer Smuck may have excluded information suggesting that Johnson was the aggressor and Tereo acted either in self-defense or defense of Reynolds. Some district courts within this circuit have suggested that perceived affirmative defenses, such as self-defense, need not be included in affidavits of probable cause. <u>See</u>, <u>e.g.</u>, <u>Gorman v. Bail</u>, 947 F. Supp. 2d 509, 523 (E.D. Pa. 2013). But the Third Circuit Court of Appeals has not made such a broad pronouncement. <u>See</u> <u>Holman v. City of York</u>, 564 F.3d 225, 231 (3d Cir. 2009). *Per contra*, the Third Circuit has stressed that probable cause analysis requires consideration of a totality of the circumstances paired with a "common sense approach." <u>Goodwin v. Conway</u>, 836 F.3d 321, 327 (3d Cir. 2016). When the court's review divulges independent and reliable exculpatory evidence known by the charging officer, such evidence may outweigh or undermine the incriminating evidence which, standing alone, established probable cause. <u>See</u> <u>Andrews</u>, 853 F.3d at 699 (quoting <u>Dempsey</u>, 834 F.3d at 469).

We conclude that Officer Smuck's alleged omissions could be material to a finding of probable cause. The alleged omissions stemming from interviews with

---

[5] Defendants ask that we "reject [Tereo's] self-serving reconstructed affidavit." (Doc. 51 at 3). At this juncture we decline to accept or reject Tereo's proposed reconstructed affidavit. Instead, we assume anything stated therein can be established in order to determine whether a reasonable jury could find the alleged omissions material to a finding of probable cause. <u>Dempsey</u>, 834 F.3d at 470.

Reynolds and Crowley, suggest, *inter alia*, that Tereo's actions were justified and that Johnson was injured because he lost his balance on a step after being pushed. They also undermine Johnson's credibility—for instance, Reynolds directly contradicts Johnson's contention that Tereo pushed him from behind without any warning. We find that summary judgment is inappropriate in light of the manifold and genuine issues of material fact that remain as to what exculpatory information was known and omitted by Officer Smuck at the time he submitted the affidavit of probable cause. The court further finds that issues of material fact remain as to whether Officer Smuck had probable cause to arrest Tereo such that Tereo's constitutional rights may have been violated. Hence, the court cannot grant qualified immunity to Officer Smuck at this procedural juncture. Accordingly, we will deny both parties' motions for summary judgment in regards to Tereo's federal malicious prosecution claim.

### 2. *Municipal Liability Claim*

Tereo claims that the Southern Police Commission is liable under <u>Monell</u> for failing to maintain policies, and related failures to train, as to material witnesses and reporting requirements. (<u>See</u> Doc. 49 at 12; Doc. 54 at 12-13). The Commission argues that Tereo's <u>Monell</u> claim fails as a matter of law because the record does not establish that it "failed to adequately train its police officers on probable cause, the quantum of evidence required to arrest, or the use of social media to identify suspects." (Doc. 45 at 21-22). The Commission also asserts that Tereo has failed to produce any evidence that demonstrates "the existence of any pattern or practice" of its officers arresting individuals without probable cause. (<u>See</u> Doc. 45 at 23; <u>see</u>

<u>also</u> Doc. 51 at 14-15). We agree with the Commission and find that the current record is devoid of evidence to support Tereo's <u>Monell</u> claim.

Municipalities and other local government entities may not be held liable in a Section 1983 suit for conduct of their employees under a theory of *respondeat superior* or vicarious liability. <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 403 (1997) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978)); <u>see also</u> <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1027 (3d Cir. 1991). Municipal liability only arises when a government causes an employee to violate another's constitutional rights by an official custom or policy. <u>Monell</u>, 436 U.S. at 690-94; <u>see</u> <u>also</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability under <u>Monell</u>, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. <u>See</u> <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003).

A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict. <u>Id.</u> at 584 (quoting <u>Kneipp</u>, 95 F.3d at 1212). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." <u>Id.</u> (quoting <u>Bryan Cty.</u>, 520 U.S. at 404). A plaintiff may also establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that

inaction exhibits "deliberate indifference" to the need.  Id. (quoting Bryan Cty., 520 U.S. at 417-18).

A government entity exhibits deliberate indifference when it "disregard[s] a known or obvious consequence of [its] . . . action." Connick v. Thompson, 563 U.S. 51, 61 (2011); see Vargas v. City of Phila., 783 F.3d 962, 974 (3d Cir. 2015).  Failure to train amounts to deliberate indifference when it causes a pattern of cognate constitutional violations.  See Connick, 563 U.S. at 62; Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010).  Alleged training deficiencies must closely relate to the constitutional injury.  City of Canton v. Harris, 489 U.S. 378, 391 (1989).

Tereo presents no affirmative evidence of the existence of an official policy or custom that causes police officers employed by the Southern Police Commission to make arrests without probable cause.  *Per contra*, the Southern Regional Police Department's Code of Conduct expressly states that law enforcement officers must have "good and sufficient probable cause" to make an arrest, as well as conduct "proper, thorough[,] and complete investigation[s]."  (Doc. 47 ¶ 38; Doc. 52 ¶ 38; see also Doc. 48-9).  Tereo also fails to proffer evidence of a single constitutional violation sufficient to suggest deliberate indifference on behalf of the Commission other than the events related to the matter *sub judice*.  The court will therefore grant the Southern Police Commission's motion and deny Tereo's motion for summary judgment as to Tereo's Monell claim.

**B.**     **State Law Claim for Malicious Prosecution**

Tereo and Officer Smuck also move for summary judgment on Tereo's state law malicious prosecution claim.  To establish a claim for malicious prosecution

23

under Pennsylvania law, a plaintiff must demonstrate: (1) defendant initiated a criminal proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) defendant initiated the proceeding without probable cause; and (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice.  See Donahue, 280 F.3d at 379 (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)).  The sole element in dispute, akin to Tereo's federal malicious prosecution claim, is whether Officer Smuck had probable cause to arrest Tereo.  (See Doc. 49 at 3-10; Doc. 51 at 2-12; Doc. 54 at 3-11).

Courts measure the existence of probable cause against the same standards whether the claim originates under state or federal law.  DeBellis v. Kulp, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001) (citing Renk, 641 A.2d at 293).  The court's probable cause assessment concerning Tereo's federal claim *supra* applies with equal force to Tereo's state law claim.  See *supra* at Part III.A.1.  Accordingly, we find that genuine issues of material fact remain as to this claim and will deny both parties' motions for summary judgment.

## IV.    <u>**Conclusion**</u>

The court will deny Tereo's motion (Doc. 46) for summary judgment.  The court will grant in part and deny in part defendants' motion (Doc. 43) for summary judgment.  An appropriate order shall issue.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania



Dated:    September 17, 2018