**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC D. TEREO,** | : | **CIVIL ACTION NO. 1:16-CV-1436** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DARRYL L. SMUCK, II, and THE** | : | |
| **SOUTHERN POLICE COMMISSION,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Last year, this court considered and resolved the parties' cross-motions for summary judgment. We denied the motion for summary judgment by plaintiff Eric D. Tereo ("Tereo") and granted in part and denied in part the motion for summary judgment by defendants. Specifically, we denied defendants' Rule 56 motion as to the malicious prosecution claims against defendant Darryl L. Smuck, II ("Officer Smuck"). Officer Smuck moves for reconsideration of that decision. (Doc. 68). We will deny his motion.

## I.    <u>Factual Background & Procedural History</u>

A thorough recitation of the factual background and claims in this case appears in this court's September 17, 2018 memorandum addressing the parties' cross-motions for summary judgment, familiarity with which is presumed. <u>See</u> <u>Tereo v. Smuck</u>, No. 1:16-CV-1436, 2018 WL 4404676, at *1-4 (M.D. Pa. Sept. 17, 2018). The instant motion for reconsideration focuses on the court's denial of Officer Smuck's request for judgment as a matter of law on Counts I and III, which assert malicious prosecution claims pursuant to 42 U.S.C. § 1983 and state law,

respectively. Officer Smuck maintains that the court made both factual and legal errors in denying summary judgment in his favor on these claims. The motion is fully briefed and ripe for disposition.

## II.   <u>Standard of Review</u>

A motion characterized simply as a "motion for reconsideration" is generally construed as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). <u>See</u> <u>Wiest v. Lynch</u>, 710 F.3d 121, 127 (3d Cir. 2013) (citations omitted). Such a motion must rely on at least one of the following three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." <u>Id.</u> at 128 (quoting <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 669 (3d Cir. 2010)); <u>see</u> <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677-78 (3d Cir. 1999); <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration of an interlocutory order, however, is subject to a more malleable standard. District courts possess inherent power to reconsider interlocutory orders "when it is consonant with justice to do so." <u>State Nat'l Ins. Co. v. County of Camden</u>, 824 F.3d 399, 406 & n.14 (3d Cir. 2016) (citing <u>United States v. Jerry</u>, 487 F.2d 600, 605 (3d Cir. 1973)); <u>Alea N. Am. Ins. Co. v. Salem Masonry Co.</u>, 301 F. App'x 119, 121 (3d Cir. 2008) (nonprecedential). Regardless of whether the order is final or interlocutory, a party may not invoke a motion for reconsideration to "relitigate old matters" or present previously available arguments or evidence. <u>See</u> <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 485 n.5 (2008) (citation omitted); <u>Kropa v. Cabot Oil & Gas Corp.</u>, 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010).

## III.  **Discussion**

Both parties incorporate the Rule 59(e) requirements for reconsideration into their briefing.  (See Doc. 69 at 3; Doc. 70 at 2).  An order granting partial summary judgment, however, is more appropriately deemed an interlocutory order under Rule 54(b), thus implicating the "when-consonant-with-justice" standard of review. See Qazizadeh v. Pinnacle Health Sys., 214 F. Supp. 3d 292, 294-95 (M.D. Pa. 2016) (citations omitted); cf. State Nat'l Ins. Co., 824 F.3d at 406 & n.14.  Even operating under this less demanding standard, Officer Smuck cannot establish that reconsideration is warranted.

### A.     **Alleged Factual Errors**

Officer Smuck contends that the court made certain factual errors when reconstructing the affidavit of probable cause.  He claims that many of the alterations we fashioned—pursuant to guidance in Andrews v. Scuilli, 853 F.3d 690, 697-98 (3d Cir. 2017), and Dempsey v. Bucknell University, 834 F.3d 457, 469-70 (3d Cir. 2016)—were "inaccurate" and "immaterial."  (See Doc. 69 at 5-11).  We disagree.

Specifically, Officer Smuck argues that there is no evidence supporting the additional facts in the reconstructed affidavit that Carl Johnson, Sr. ("Johnson") may have been the aggressor during the incident or that Tereo may have been acting in self-defense or in defense of the store clerk, Tammy Reynolds ("Reynolds").  (See id. at 6-8).  Officer Smuck is incorrect.  As we noted in our prior opinion, there is a genuine dispute of material fact as to what information Reynolds and another store employee—Alice Crowley ("Crowley")—told Officer Smuck when

he interviewed them prior to filing the criminal complaint against Tereo. See Tereo, 2018 WL 4404676, at *7. When viewing the facts in a light most favorable to Tereo—the nonmovant for purposes of defendants' Rule 56 motion—there clearly is evidence that Officer Smuck omitted exculpatory information from the affidavit of probable cause that he learned from his interviews with Reynolds and Crowley.

For instance, at the preliminary hearing, Officer Smuck admitted that, in their interviews, Reynolds and Crowley both discussed Johnson "being the aggressor." Id. (citing (Hr'g Tr. 25:6-8)); (see also Doc. 52 ¶ 9). Reynolds testified at Tereo's criminal trial that (1) Johnson had been "hostile" and "aggressive" at the gas station on prior occasions; (2) Johnson had been told to leave the premises on the day of the incident because he was harassing customers and was "ranting and raving" about people smoking near the gas pumps; (3) Johnson refused to leave and instead got "in [Reynold's] face"; (4) Johnson also "got into [Tereo's] face"; (5) Tereo positioned himself between Reynolds and Johnson and did not push Johnson from behind; (6) Reynolds believed that Tereo was trying to protect her and that Johnson was the aggressor; and (7) Johnson fell down after a "medium"-force push because he tripped on a step. (Doc. 48-2 at 3 ¶ 4; Doc. 48-2 at 4 ¶ 13; Trial Tr. 36:8-50:25). Crowley testified extensively about Johnson's belligerent, aggressive, and confrontational actions at the gas station, both on the day of the incident and on prior occasions. (See Trial Tr. 83:3-90:6). Reynolds and Crowley further averred that, in their interviews with Officer Smuck prior to his filing of charges, they had told him substantially the same information that they subsequently testified to at Tereo's criminal trial. See Tereo, 2018 WL 4404676, at *7 (citing (Doc. 48-2 at 5

¶¶ 18-20; Doc. 48-3 at 3 ¶¶ 20-22)).  Even assuming that Officer Smuck maintains that Crowley or Reynolds did not relay all the information contained in their trial testimony, that does not resolve the genuine dispute regarding Officer Smuck's potential knowledge of numerous exculpatory facts omitted from the affidavit of probable cause.  See id.

We likewise disagree with Officer Smuck that the additional facts in the reconstructed affidavit are "immaterial."  Officer Smuck conflates the "relevancy" analysis, which considers what information should have been included in the affidavit of probable cause, with the "materiality" analysis, which examines the likely effect of the omitted information on the probable cause determination.  See Dempsey, 834 F.3d at 470-71 & n.9.  As the Dempsey panel explained, "[t]o determine whether information was recklessly omitted, we ask whether the officer withheld a fact in his ken" that a reasonable person would have understood was the "kind of thing" a neutral arbiter would want to know.  Id. at 470-71 (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)).  This relevancy determination is distinct from the inquiry concerning whether the omissions were "necessary" to the finding of probable cause.  Id. at 471 n.9 (citation omitted).  Quite frankly, it is difficult to comprehend how the information that Reynolds and Crowley averred that they told Officer Smuck about the incident and Johnson's past similar conduct (as outlined

above and contained in the reconstructed affidavit) could *not* be considered relevant to a probable cause determination.[1]

Furthermore, we do not waver from our prior conclusion that "Officer Smuck's alleged omissions could be material to a finding of probable cause." Tereo, 2018 WL 4404676, at *10. Those omissions suggest that Johnson was the aggressor; Tereo was acting in self-defense or defense of Reynolds; Johnson's version of events was not credible; Johnson had a history of behaving in a harassing, aggressive, and belligerent manner at that gas station; and Johnson's fall was due in part to losing his balance on a step after being pushed. Id. at *10.

These countervailing facts, at the very least, call into question whether Tereo had the requisite *mens rea* for the crimes charged. For example, to be guilty of harassment under Pennsylvania law, the offender must perform a harassing action "with intent to harass, annoy or alarm" another person. See 18 PA. CONS. STAT. § 2709(a). Likewise, for disorderly conduct, the offender must specifically intend "to cause public inconvenience, annoyance or alarm," or "recklessly creat[e] a risk thereof." Id. § 5503(a). Officer Smuck charged Tereo with the most serious grading for disorderly conduct—misdemeanor of the third degree. See id. § 5503(b); (Doc. 44-11 at 3). A misdemeanor grading for disorderly conduct requires intent "to cause *substantial* harm or *serious* inconvenience[.]" 18 PA. CONS. STAT. § 5503(b)

---

[1] Assuming *arguendo* some of the ancillary facts regarding the former investigating officer's file and the missing surveillance video are not included in the reconstructed affidavit, exclusion of those facts does not in any way change our materiality determination. That determination hinged on the omitted evidence proffered by Reynolds and Crowley. See Tereo, 2018 WL 4404676, at *8-10.

(emphasis added); see Commonwealth v. Fedorek, 946 A.2d 93, 99-102 (Pa. 2008). The events as recounted by Reynolds and Crowley seriously undermine a finding that Tereo was acting with the requisite criminal mental state during the incident. We reiterate that we believe, considering the reconstructed affidavit as a whole, that a "'reasonable jury could find facts that would lead to the conclusion' that the reconstructed affidavit 'lacked probable cause'" for the crimes charged. See Dempsey, 834 F.3d at 477 (quoting Wilson, 212 F.3d at 787).

We reject Officer Smuck's contention that Dempsey's outcome should control here. Dempsey's materiality determination was "necessarily specific to the circumstances presented" in that case. Id. at 480. In fact, the Dempsey court explicitly observed that its conclusion on materiality might have been different if there had been "evidence contradicting" the accuser's explanation of events that occurred when the accused and accuser were alone, or if there had not been substantial corroborating evidence of the accuser's version of the incident. Id.; see also Andrews, 853 F.3d at 705 (finding that omitted evidence "that potentially undermines the sole witness's reliability" combined with "lack of [any] independent corroboration" was material to probable cause determination and could outweigh positive identification). In the case *sub judice*, the nonparty eyewitness testimony largely contradicts Johnson's version of the incident—a version that has little to no corroborating evidence. Accordingly, unlike in Dempsey, a reasonable jury could conclude that there was *not* a "fair probability" that Tereo committed the crimes charged and prosecuted.

### B. Alleged Mistake of Law

Officer Smuck also contends that the court failed to "evaluate [his] assertion of qualified immunity[.]" (Doc. 69 at 12). He argues that it is unsettled whether "evidence of the affirmative defense of self-defense" is a relevant consideration for an affidavit of probable cause and, therefore, he is entitled to qualified immunity on the federal malicious prosecution claim. Officer Smuck is mistaken.

First, we did evaluate Officer Smuck's assertion of qualified immunity. See Tereo, 2018 WL 4404676, at *5-6. Officer Smuck rejoins that we defined the right at issue at too broadly.[2] He posits that the inquiry for qualified-immunity purposes is whether it was "clearly established" that a police officer must include evidence of "the affirmative defense of self-defense" in the probable cause affidavit. (Doc. 69 at 12).

We decline to adopt Officer Smuck's construction of the right involved, primarily because it does not encompass all the issues and facts implicated in this case. But even if we accepted Officer Smuck's framing and found that it would not be plainly incompetent for an officer to omit facts regarding self-defense, the abundance of other exculpatory evidence Officer Smuck potentially excluded nullifies his assertion that qualified immunity shields him from liability. In other

---

[2] Following Andrews, we framed the right involved as "the right to be free from arrest [and prosecution on criminal charges] except upon probable cause." Tereo, 2018 WL 4404676, at *6 (citing Andrews, 853 F.3d at 705). Even if we narrowed our formulation to the legal precept that law enforcement officers must provide all relevant information to the neutral arbiter in the affidavit of probable cause, this law too was clearly established when Officer Smuck filed the criminal complaint against Tereo. See Wilson, 212 F.3d at 787-88.

words, while it may not be "clearly established" that facts regarding self-defense are relevant to a probable cause analysis, Officer Smuck has failed to demonstrate that *other* plainly exculpatory evidence was not knowingly or recklessly disregarded in violation of clearly established law. Consequently, our denial of qualified immunity on the federal malicious prosecution claim was not erroneous.

## IV.  Conclusion

We will deny Officer Smuck's motion (Doc. 68) for reconsideration for the above-stated reasons. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:  July 9, 2019